AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Blue AT&T<br>Model: EA211001<br>IMEI:355527370564820 | )<br>)<br>) Case No.  24MJ8184<br>)<br>)<br>) |

**FILED**
Feb 27 2024
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY      s/ VeronicaCota      DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-4, incorporated herein by reference.

located in the     Southern     District of     California     , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
____telephone____ *(specify reliable electronic means)*.

Date:  02/26/2024

*Judge's signature*

City and state:  El Centro, California            HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:**     Blue AT&T
          Model: EA211001
          IMEI:355527370564820
          Seized from Crystal Antoinette VILLELA
          **(Target Device #4)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-6 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of January 21, 2024, up to and including February 21, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

# INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**  Blue Cricket
Model: Unknown
With no identifying numbers or features
Seized from Christian PEREZ
**(Target Device #1)**

**A-2:**  Blue Motorola
Model: Unknown
With no identifying numbers or features
Seized from Christian PEREZ
**(Target Device #2)**

**A-3:**  Gray TCL
Model: Unknown
With no identifying numbers or features
Seized from Crystal Antoinette VILLELA
**(Target Device #3)**

**A-4:**  Blue AT&T
Model: EA211001
IMEI:355527370564820
Seized from Crystal Antoinette VILLELA
**(Target Device #4)**

**A-5:**  Blue ZTE
Model: Unknown
With no identifying numbers or features
Seized from Andres URZUA-Robles
**(Target Device #5)**

**A-6:**   Gray OPPO Cellphone
Model: Unknown
With no identifying numbers or features
Seized from Andres URZUA-Robles
**(Target Device #6) (Collectively "Target Devices")**

as further described in Attachments A-1 to A-6, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.   The requested warrant relates to the investigation and prosecution of Christian PEREZ (PEREZ) and Crystal Antoinette VILLELA (VILLELA) for transportation of illegal alien Andres URZUA-Robles (URZUA) (the "Material Witness") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from PEREZ, VILLELA, and the Material Witness on or about February 20, 2024, incident to the arrest of PEREZ, VILLELA and the Material Witness. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3.   Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents.  Dates and times are approximate.

### EXPERIENCE AND TRAINING

4.   I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the

Immigration and Naturalization Act (INA), training in Titles 8,18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example,

drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

4

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On February 20, 2024, at approximately 8:35 a.m., BPA A. Mendez, assigned to the Remote Video Surveillance System (RVSS) room, observed three suspected illegal aliens walking north from the International Boundary Fence towards the All-American Canal (AAC) approximately 1.5 miles east of Drop 3. RVSS operators and a BPA drone operator, A. Long-Garcia, maintained visual of the individuals as they crossed the AAC and continued north towards Highway 98. At approximately 10:59 a.m., BPA A. Mendez and BPA A. Long-Garcia observed the group run to Highway 98 and board a white sedan, later identified as a white Volkswagen Jetta, approximately one mile west of the Caltrans compound. The Jetta continued eastbound on Highway 98.

11. BPA W. Carlton, driving an unmarked Border Patrol Service vehicle, located the Jetta as it passed Caltrans compound on Highway 98 and activated the emergency lights and siren on his service vehicle at the Gordon's Well overpass. The Jetta pulled to the shoulder of the Interstate 8 eastbound lanes and came to a stop. Once the Jetta yielded, BPA Carlton approached the driver, later identified as PEREZ, and identified himself as a U.S. BPA. PEREZ was determined to be a United States Citizen. BPA A. Gaytan approached the front seat passenger, later identified as VILLELA, and determined her to be a United States Citizen. BPA Gaytan then approached the three back seat passengers,

two of which were later identified as Andres URZUA Robles and Marcella CADAVID. CADAVID was determined to be a citizen of Colombia. URZUA and the other backseat passenger were determined to be citizens of Mexico. All three backseat passengers were determined to be illegally present in the United States. PEREZ, VILLELA, CADAVID and the two passengers were transported to the Calexico Border Patrol Station for further processing.

12. At the Border Patrol Station, PEREZ admitted he was aware the three people he transported were illegal aliens. PEREZ admitted he intended to transport the group of illegals to Yuma, Arizona. PEREZ admitted he knows it is a crime to pick up and transport illegal aliens in the U.S., but he did it to help and not for monetary gain. PEREZ admitted successfully participating in a prior alien smuggling event where he was financially compensated for picking up and transporting other illegal aliens further north into the U.S.

13. At the Border Patrol Station, VILLELA stated that on today's date, she went with PEREZ and while they were driving, PEREZ pulled over to the side of the highway and picked up three people. VILLELA acknowledged she was aware that the three people were here illegally. VILLELA stated that after they picked up the people on the side of the road, she asked PEREZ where they were going and what they were doing, but he told her not to worry about it. VILLELA denied knowing where they were going and stated that she did not receive nor was she offered any money from PEREZ.

14. Material Witness URZUA stated he is a citizen of Mexico. URZUA stated he agreed to pay $6,000.00 Mexican Pesos before being smuggled into the United States. URZUA stated he saw a male driver and female passenger in the front seat. Record checks revealed that CADAVID has extensive criminal/immigration history. CADAVID had been previously ordered removed from the United States on September 21, 2000, by an Immigration Judge. CADAVID was last removed from the United States to Colombia on May 01, 2012, through Boston, Massachusetts.

15. During a search incident to the arrest of PEREZ, VILLELA, and the Material Witnesses, six cellphones were found. Agents found a blue Cricket (Target Device #1) in

PEREZ'S hand and BPA W. Carlton found a blue Motorola (Target Device #2) in the driver's side door pocket. PEREZ claimed ownership of both of these cellphones and they were seized as evidence. SBPA Gaytan found a gray TCL (Target Device #3) and a blue AT&T (Target Device #4) in VILLELA's hand. VILLELA claimed ownership of these two cellphones, and they were seized as evidence. A blue ZTE (Target Device #5) was found in URZUA's hand and a gray OPPO Cellphone (Target Device #6) was found in the headrest behind him. URZUA claimed ownership of both of these cellphones and they were seized as evidence.

16. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on January 21, 2024, up to and including February 21, 2024, the day after the arrest of PEREZ, VILLELA, and the Material Witness.

## METHODOLOGY

17. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or

7

hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

//
//
//
//
//
//
//
//
//

## CONCLUSION

20. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that PEREZ, VILLELA, and the Material Witness used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by PEREZ, VILLELA, the Material Witness, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 26th day of February, 2024.

_____ 3:23 p.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**        Blue Cricket
                Model: Unknown
                With no identifying numbers or features
                Seized from Christian PEREZ
                **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**  Blue Motorola
Model: Unknown
With no identifying numbers or features
Seized from Christian PEREZ
**(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**  Gray TCL
Model: Unknown
With no identifying numbers or features
Seized from Crystal Antoinette VILLELA
**(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:**   Blue AT&T
Model: EA211001
IMEI:355527370564820
Seized from Crystal Antoinette VILLELA
**(Target Device #4)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-5
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-5:**  Blue ZTE
Model: Unknown
With no identifying numbers or features
Seized from Andres URZUA-Robles
**(Target Device #5)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-6
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-6:**         Gray OPPO Cellphone
              Model: Unknown
              With no identifying numbers or features
              Seized from Andres URZUA-Robles
              **(Target Device #6)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-6 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of January 21, 2024, up to and including February 21, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.